United States District Court
Northern District of Illinois

---

Gerry Zurek,

*On behalf of himself and those similarly situated*,

Plaintiff,
v.

Yas Partners EV, Inc.; Yas Partners Evanston, Inc.; Yas Partners Management, LLC; Yas Partners MP LLC; Yas Partners Nl, Inc.; Yas Partners Pal LLC; Yas Partners SCH LLC; Yas Partners STW LLC; Yas Partners SW Inc.; Yas Partners YV, Inc.; Yas Partners 2 Inc.; Yas Partners 3, Inc.; Anand Shanmugam; Thirumalai Satish; Kavitha Satish; Doe Corporations 1-10; John Doe 1-10

Defendants.

Case No. 22-cv-4004

Jury Trial Demanded

---

Class and Collective Action Complaint

---

Plaintiff, Gerry Zurek, on behalf of himself and similarly situated others complains of Defendants, Yas Partners EV, Inc., *et al* as follows:

**Nature of the Case**

1.    Plaintiff and the individuals he seeks to represent are current and/or former delivery drivers for Defendants' Papa John's stores.  Plaintiff alleges that Defendants' policy of requiring delivery drivers to provide their own cars for work and reimbursing the delivery drivers for their vehicle expenses at a per-delivery amount that was less than the IRS standard business

1

mileage rate and is not based on records of the delivery drivers' actual expenses has resulted in the delivery drivers being the victims of numerous wage and hour violations.

2. This Complaint follows for violations of the Federal Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act.

**Parties**

3. Plaintiff, Gerry Zurek, is a citizen and resident of the United States and of the State of Illinois and County of Cook.

4. At all relevant times, Plaintiff was an "employee" of all Defendants as defined in the FLSA, the IMWL, and the IWPCA.

5. Plaintiff brings this claim individually and on behalf and on behalf of similarly situated others working for Defendants nationwide, and similarly situated others working for Defendants in Illinois.

6. Plaintiff is an employee of Defendants within the meaning of Section 203(e) of the Fair Labor Standards Act, Section 105/3(d) of the Illinois Minimum Wage Law, and Section 115/2 of the Illinois Wage Payment and Collection Act. (29 U.S.C. §203(d), 820 ILCS 105/3(d), and 820 ILCS 115/2, respectively.)

7. Plaintiff's consent to be a Plaintiff is attached as Ex. A to this Complaint.

8. The Corporate Defendants are Yas Partners EV, Inc.; Yas Partners Evanston, Inc.; Yas Partners Management, LLC; Yas Partners MP LLC; Yas Partners Nl, Inc.; Yas Partners Pal LLC; Yas Partners SCH LLC; Yas Partners STW LLC; Yas Partners SW Inc.; Yas Partners YV, Inc.; Yas Partners 2 Inc.; Yas Partners 3, Inc.; and Doe Corporations 1-10 (collectively "Entity Defendants.")

2

9. The Entity Defendants are domestic corporations and limited liability companies with their principal places of business in Illinois and operating Papa John's stores in Illinois. As to each corporate Defendant, it is an employer within the meaning of Section 203(d) of the Fair Labor Standards Act, Section 105/3(c) of the Illinois Minimum Wage Law, and Section 115/2 of the Illinois Wage Payment and Collection Act. (29 U.S.C. §203(d), 820 ILCS 105/3(c), and 820 ILCS 115/2, respectively.)

10. The individual Defendants are Anand Shanmugam; Thirumalai Satish; Kavitha Satish and John Doe 1-10 (collectively "Individual Defendants"). On information and belief, the individual Defendants are the current or former owners and/or operators of multiple Papa John's Pizza locations in Illinois ("Defendants' Papa John's stores").

11. Defendants' Papa John's stores are currently owned and/or operated by Anand Shanmugam, Thirumalai Satish, and Kavitha Satish.

12. As to each individual Defendant, he or she is an employer within the meaning of Section 203(d) of the Fair Labor Standards Act, Section 105/3(c) of the Illinois Minimum Wage Law, and Section 115/2 of the Illinois Wage Payment and Collection Act. (29 U.S.C. §203(d), 820 ILCS 105/3(c), and 820 ILCS 115/2, respectively.)

13. The Individual Defendants and Entity Defendants are referred to herein collectively as "Defendants".

14. At all relevant times, Defendants have shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated employees at Defendants' Papa John's stores.

3

15. At all relevant times, Defendants have had direct or indirect control over the terms and conditions of Plaintiff's work and the work of similarly situated employees.

16. At all relevant times, Defendants possessed the authority to control the terms and conditions of Plaintiff's employment and the employment of similarly situated employees and have exercised that authority.

17. Yas Partners Nl, Inc. was the entity on Plaintiff's paystubs.

18. The Entity Defendants own several Papa John's Pizza stores in Illinois.

19. The Entity Defendants are owned and/or operated by Defendants Anand Shanmugam, Thirumalai Satish, and Kavitha Satish.

20. The Entity Defendants are franchisees of Papa John's International, Inc.

21. Defendants operate together as a Papa John's franchisee. The entities and individuals share intelligence, best practices, licenses, subscriptions, software, etc., in the course of operating their business.

22. Because the work performed by Plaintiff and all other employees benefited all Defendants and directly or indirectly furthered their joint interest, Defendants are each employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer".

23. The Entity Defendants had/have substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24. The Entity Defendants had/have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

4

25.     At all relevant times, The Entity Defendants maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

26.     The Entity Defendants were/are an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA the IMWL, and the IWPCA.

27.     At all relevant times, The Entity Defendants have been and continue to be enterprises engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

28.     Upon information and belief, The Entity Defendants entered into transactions to purchase or otherwise take ownership of Defendants' Papa John's stores.

29.     The Entity Defendants' gross revenue exceeds $500,000 per year.

30.     Thirumalai Satish is the current President of Yas Partners EV, Inc., Yas Partners Nl, Inc., Yas Partners SW Inc., Yas Partners 2 Inc., and Yas Partners 3 Inc.

31.     Thirumalai Satish is the current Manager of Yas Partners MP LLC, Yas Partners Pal LLC, Yas Partners SCH LLC, and Yas Partners STW LLC.

32.     Thirumalai Satish is the current Secretary of Yas Partners YV, Inc. and Yas Partners 2 Inc.

33.     Upon information and belief, Thirumalai Satish entered into a transaction to purchase or otherwise take ownership of Defendants' Papa John's stores.

34.     Thirumalai Satish is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Illinois law because he owns and/or operates

the Defendants' Papa John's stores, serves as manager of the Defendant entities, ultimately controls significant aspects of the Defendants' Papa John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

35.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has a role in significant aspects of the Defendants' Papa John's stores day-to-day operations.

36.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had control over Defendants' Papa John's stores' pay policies.

37.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had power over personnel and payroll decisions at the Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

38.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's stores.

39.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

40.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to transfer the assets and liabilities of Defendants' Papa John's stores.

41.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to declare bankruptcy on behalf of the Defendants' Papa John's stores.

42.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to enter into contracts on behalf of each of Defendants' Papa John's stores.

43.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

44.     By virtue of his role as a President, Manager, and/or Secretary of the Defendants' Papa John's stores, Thirumalai Satish had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

45.     Defendants' Papa John's stores have functioned for Thirumalai Satish's profit.

46.     Thirumalai Satish has had influence over how the Defendants' Papa John's stores can run more profitably and efficiently.

47.     Anand Shanmugam is the current President of Yas Partners Evanston Inc. and Yas Partners YV, Inc.

48.     Upon information and belief, Anand Shanmugam entered into a transaction to purchase or otherwise take ownership of Defendants' Papa John's stores.

49.     Anand Shanmugam is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Illinois law because he owns and/or operates the Defendants' Papa John's stores, serves as manager of the Defendant entities, ultimately

controls significant aspects of the Defendants' Papa John's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

50.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has a role in significant aspects of the Defendants' Papa John's stores day-to-day operations.

51.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had control over Defendants' Papa John's stores' pay policies.

52.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had power over personnel and payroll decisions at the Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

53.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's stores.

54.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

55.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to transfer the assets and liabilities of Defendants' Papa John's stores.

56.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to declare bankruptcy on behalf of the Defendants' Papa John's stores.

8

57.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to enter into contracts on behalf of each of Defendants' Papa John's stores.

58.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

59.     By virtue of his role as a President of the Defendants' Papa John's stores, Anand Shanmugam had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

60.     Defendants' Papa John's stores have functioned for Anand Shanmugam's profit.

61.     Anand Shanmugam has had influence over how the Defendants' Papa John's stores can run more profitably and efficiently.

62.     Kavitha Satish is the current Manager of Yas Partners Management, LLC

63.     Upon information and belief, Kavitha Satish entered into a transaction to purchase or otherwise take ownership of Defendants' Papa John's stores.

64.     Kavitha Satish is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Illinois law because she owns and/or operates the Defendants' Papa John's stores, serves as manager of the Defendant entities, ultimately controls significant aspects of the Defendants' Papa John's stores' day-to-day functions, and ultimately has control over-compensation and reimbursement of employees. 29 U.S.C. § 203(d).

65.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has a role in significant aspects of the Defendants' Papa John's stores day-to-day operations.

66.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had control over Defendants' Papa John's stores' pay policies.

67.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had power over personnel and payroll decisions at the Defendants' Papa John's stores, including but not limited to influence of delivery driver pay.

68.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to hire, fire, and discipline employees, including delivery drivers at the Defendants' Papa John's stores.

69.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Papa John's stores.

70.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to transfer the assets and liabilities of Defendants' Papa John's stores.

71.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to declare bankruptcy on behalf of the Defendants' Papa John's stores.

72.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to enter into contracts on behalf of each of Defendants' Papa John's stores.

73.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish has had the power to close, shut down, and/or sell each of Defendants' Papa John's stores.

74.     By virtue of her role as a Manager of the Defendants' Papa John's stores, Kavitha Satish had authority over the overall direction of each of Defendants' Papa John's stores and was ultimately responsible for their operations.

75.     Defendants' Papa John's stores have functioned for Kavitha Satish's profit.

76.     Kavitha Satish has had influence over how the Defendants' Papa John's stores can run more profitably and efficiently.

77.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Papa John's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA the IMWL, and the IWPCA.

78.     Upon information and belief, Defendants own and/or operate, in whole or in part, a number of other entities that make up part of the Defendants' operation.

79.     Upon information and belief, the franchisor, Papa John's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Papa John's stores.

80.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

81.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA, the IMWL, and the IWPCA.

82.     Upon information and belief, the Defendants entered into co-owner relationships with a number of managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Papa John's stores as that term is defined by the FLSA, the IMWL, and the IWPCA.

83.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

### Jurisdiction and Venue

84.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

85.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Illinois law claims.

86.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(3) because Defendants Yas Partners EV, Inc., Yas Partners Evanston, Inc., Yas Partners Management, LLC, Yas Partners MP LLC; Yas Partners Nl, Inc., Yas Partners Pal LLC, Yas Partners SCH LLC, Yas Partners STW LLC, Yas Partners SW Inc., Yas Partners YV, Inc., Yas Partners 2 Inc., Yas Partners 3, Inc., Anand Shanmugam, Thirumalai Satish, Kavitha Satish reside in this district.

### Facts

### Class-wide Factual Allegations

87.     During all relevant times, Defendants have operated the Defendants' Papa John's stores.

88.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Papa John's stores.

12

89.     All delivery drivers employed at the Defendants' Papa John's stores over the last ten years have had essentially the same job duties.

90.     The delivery drivers at the Defendants' Papa John's stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

91.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Papa John's stores folding boxes, doing dishes, stocking coolers, mopping, and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

92.     Defendants' delivery drivers did not complete their tipped duties and their non-tipped duties simultaneously.

93.     Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked while delivering Defendants' products to its customers.

94.     Defendants require delivery drivers at the Defendants' Papa John's stores to provide cars to use while completing deliveries for Defendants.

95.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

96.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone

13

costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

97.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

98.     Plaintiff and similarly situated delivery drivers receive a per-delivery reimbursement payment that is less than the IRS standard business mileage rate.

99.     Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

100.    The Defendants' Papa John's stores do not track or record the delivery drivers' actual expenses.

101.    The Defendants' Papa John's stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

102.    The Defendants' Papa John's stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

103.    The Defendants' Papa John's stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

104.    The Defendants' Papa John's stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

14

105.     The Defendants' Papa John's stores do not collect receipts of delivery drivers' automobile registration costs.

106.     The Defendants' Papa John's stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

107.     The Defendants' Papa John's stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Papa John's stores.

108.     The Defendants' Papa John's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

109.     The Defendants' Papa John's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

110.     The Defendants' Papa John's stores do not reasonably approximate the delivery drivers' expenses.

111.     The Defendants' Papa John's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

112.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

        2012: 55.5 cents/mile
        2013: 56.5 cents/mile
        2014: 56 cents/mile
        2015: 57.5 cents/mile
        2016: 54 cents/mile
        2017: 53.5 cents/mile
        2018: 54.5 cents/mile
        2019: 58 cents/mile
        2020: 57.5 cents/mile
        2021: 56 cents/mile

2022: 58.5 cents/mile

113.     The delivery drivers at the Defendants' Papa John's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—e.g., cell phone and data charges.

114.     The delivery drivers at the Defendants' Papa John's stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

115.     Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

116.     Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

117.     Defendants benefit from the delivery drivers at the Defendants' Papa John's stores spending time off the clock repairing and maintaining their vehicles.

118.     Defendants benefit from delivery drivers at the Defendants' Papa John's stores taking on the risk of using their vehicles to drive for Defendants' business.

119.     Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

120.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Illinois law.

121.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Papa John's stores.

16

122.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

123.    Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

124.    Defendants have willfully failed to pay federal and Illinois state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Papa John's stores.

### Plaintiff's Individual Factual Allegations

125.    Plaintiff worked at the Defendant's Papa John's store in Nile, Illinois from Approximately June 2020 to June 2021.

126.    Plaintiff worked dual jobs. One job where Plaintiff was on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

127.    Plaintiff was paid minimum wage minus a tip credit for all hours worked.

128.    When Plaintiff began working at the Defendant's Papa John's store, he was paid $6.00 per hour for all hours worked.

129.    By the end of Plaintiff's employment in June 2021, he was paid $7.00 per hour for all hours worked.

130.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

131.    Plaintiff was required to use his own car to deliver pizzas.

132.    Plaintiff was reimbursed $1.10 per delivery.

133.    Plaintiff regularly drove approximately 4.7 miles per round trip delivery.

134.    As a result, Defendants' reimbursement policy resulted in Plaintiff receiving approximately $.23 per mile on average ($1.10 per delivery / 4.7 miles per delivery).

135.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

136.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

137.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

138.    Defendants did not track the actual expenses incurred by Plaintiff.

18

139.  Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

140.  Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

141.  Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

142.  Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

143.  Plaintiff regularly made approximately 2 deliveries per hour during the hours he worked as a delivery driver.

144.  In 2021, for example, the IRS business mileage reimbursement was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.33 ($.56 - $.23) per mile. Considering Plaintiff's estimate of about 4.7 miles per delivery, Defendants under-reimbursed him about $1.55 per delivery ($.33 x 4.7 miles).

145.  Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

146.  Defendants improperly paid Plaintiff a tipped wage rate for time he worked in a non-tipped role.

147.     In July 2020, the Illinois minimum wage was increased to $10.00 per hour. Defendants failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

148.     Plaintiff brings the First Count on behalf of himself and

All similarly situated current and former delivery drivers employed at the Defendants' Papa John's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

149.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage minus a tip credit for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

150.     Defendants' unlawful conduct is pursuant to a company policy or practice.

151.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

152.     Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

153.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

154.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

155.    The FLSA Collective members are readily identifiable and ascertainable.

156.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

157.    Plaintiff brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Papa John's stores in the State of Illinois between the date ten years prior to the filing of the original complaint and the date of final judgment in this matter ("Illinois Wage Class").

158.    The number and identity of the Illinois Wage Class members are ascertainable from Defendants' records.

159.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Illinois Wage Class are determinable from Defendants' records.

160.    All of the records relevant to the claims of members of the Illinois Wage Class should be found in Defendants' records.

161.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

162.    Notice can be provided by means permissible under Rule 23.

163. The members of the Illinois Wage Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

164. There are more than 50 Illinois Wage Class members.

165. Plaintiff's claims are typical of those claims which could be alleged by any Illinois Wage Class member, and the relief sought is typical of the relief which would be sought by each Illinois Wage Class member in separate actions.

166. Plaintiff and the members of the Illinois Wage Class were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

167. Plaintiff and the Illinois Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Illinois wage law.

168. Plaintiff and the members of the Illinois Wage Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

169. Plaintiff is able to fairly and adequately protect the interests of the Illinois Wage Class and has no interests antagonistic to the Illinois Wage Class.

170. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

171. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit

a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

172. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

173. Common questions of law and fact exist as to the Illinois Wage Class that predominate over any questions only affecting Plaintiff and the Illinois Wage Class members individually and include, but are not limited to:

    a. Whether Plaintiff and the Illinois Wage Class members were owed the wage rate promised for every hour worked pursuant to an agreement between them and the Defendants;

    b. Whether Plaintiff and the Illinois Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

    c. Whether Plaintiff and the Illinois Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    d. Whether Plaintiff and the Illinois Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    e. Whether Defendants reimbursed Plaintiff and the Illinois Wage Class members for their actual expenses;

    f. Whether Defendants reimbursed Plaintiff and the Illinois Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    g. Whether Defendants properly reimbursed Plaintiff and the Illinois Wage Class members;

23

h.  Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Illinois Wage Class;

i.  Whether Plaintiff and the Illinois Wage Class were actually paid the wage rate they were promised by Defendants;

j.  The nature and extent of class-wide injury and the measure of damages for those injuries.

In recognition of the services Plaintiff has rendered and will continue to render to the Illinois Wage Class, Plaintiff will request payment of a service award upon resolution of this action.

**Causes of Action**

**Count 1**
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

174.  Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

175.  Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

176.  Defendants paid Plaintiff and the FLSA Collective a tipped wage rate for all hours worked.

177.  Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

178.  Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

24

179.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

180.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

181.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law, 820 ILCS 105, *et seq*.**
**(On Behalf of Plaintiff and the Illinois Wage Class)**

182.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

183.    Defendants paid Plaintiff and the Illinois Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

184.    Defendants ostensibly paid Plaintiff and the Illinois Wage Class at or close to minimum wage minus a tip credit for the hours they worked.

185.    Because Defendants required Plaintiff and the Illinois Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

186.    By not paying Plaintiff and the Illinois Wage Class at least minimum wage for each hour worked, Defendants have violated the IMWL.

25

187.     As a result of Defendants' violations, Plaintiff and the Illinois Wage Class are entitled to treble the amount of unpaid minimum wages and unreimbursed expenses, 5% damages, costs, and attorneys' fees and costs, as provided by 820 ILCS 105/12(a).

**Count 3**
**Violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et seq.***
**(On Behalf of Plaintiff and the Illinois Wage Class)**

188.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

189.     The IWPCA requires employers to pay their employees all wages earned by them during the semi-monthly or bi-weekly pay period. 820 ILCS 115/4.

190.     The IWPCA prohibits employers from taking deductions from their employees' wages unless those deductions are required by law, benefit the employee, made with the express written consent of the employee, or meet another exception not relevant here. 820 ILCS 115/9.

191.     The IWPCA requires employers to reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to the services performed by the employer. 820 ILCS 115/9.5.

192.     Defendants provided no mechanism or procedure through which delivery drivers could submit supporting documentation of the expenses they incurred related ot using their vehicles on Defendants' business.

193.     Because Defendants under-reimbursed the delivery drivers for their vehicle expenses, Defendants failed to pay Plaintiff and the Illinois Wage Class all wages earned by them during semi-monthly or bi-weekly pay periods, in violation of the IWPCA.

26

194.     By requiring the delivery drivers to incur vehicle expenses to advance the business and not adequately reimbursing for those expenses, Defendants have taken unauthorized deductions from the wages of the Illinois Wage Class and have failed to meet the requirements for reimbursing for employee expenses, in violation of the IWPCA.

195.     Plaintiff and the Illinois Wage Class were entitled to be reimbursed for all necessary expenditures incurred within the scope of employment and directly related to the services performed for the employer.

196.     Defendants' practice of failing to pay Plaintiff and the Illinois Wage Class at the rate agreed to by the parties violated the IWPCA.

197.     Defendants' practice of failing to reimburse Plaintiff and the Illinois Wage Class for all necessary expenditures incurred within the scope of employment and directly related to the services performed for the employer violated the IWPCA.

198.     Plaintiff and the Illinois Wage Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. See 735 ILCS 5/13-206.

199.     As a result of Defendants' violations of the IWPCA, Plaintiff and the Illinois Wage Class, are entitled to unpaid wages, damages in the amount of 5% of unpaid wages compounding monthly, reasonable attorneys' fees, and costs. 820 ILCS 115/14.

**WHEREFORE**, Plaintiff Gerry Zurek prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this

action, and appointment of Plaintiff and their counsel to represent the collective action members.

        B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

        C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

        D.      Designation of Plaintiff as representative of the Illinois Wage Class and counsel of record as Class Counsel of Illinois Wage Class.

        E.      A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA.

        F.      An award of unpaid minimum wages, unreimbursed expenses, and unlawful deductions due under the IMWL and IWPCA.

        G.      Statutory damages under the IMWL.

        H.      Statutory damages under the IWPCA.

        I.      An award of prejudgment and post-judgment interest.

        J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

        K.      Such other legal and equitable relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/___Aaron B. Maduff_____
Aaron B. Maduff
Atty. No. 6226932
Maduff & Maduff, LLC
abmaduff@madufflaw.com

Andrew R. Biller *(pro hac vice forthcoming)*
Andrew P. Kimble *(pro hac vice forthcoming)*
Emily A. Hubbard *(pro hac vice forthcoming)*
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*